## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH DAKOTA
### Civil Case No.:

| | |
|---|---|
| Steven Flemmer and Aamna Flemmer *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> vs. <br><br> DCI Credit Services, Inc., <br><br> Defendant. | **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1.       Plaintiffs Steven Flemmer and Aamna Flemmer bring this consumer class action arising out of Defendant DCI Credit Services, Inc.'s violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. ("FDCPA").

## JURISDICTION AND VENUE

2.       This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C § 1692k.

3.       Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) because the parties are located in this Judicial District; Defendant DCI Credit Services, Inc. transacts business in this Judicial District; and the events or conduct giving rise to the claims occurred in this Judicial District.

## PARTIES

4.     Plaintiff Steven Flemmer (hereinafter "Steven") is a natural person, and citizen of the State of North Dakota.  Plaintiff Steven resides in Bismarck, ND, Burleigh County.

5.     Plaintiff Aamna Flemmer (hereinafter "Aamna") is a natural person, and citizen of the State of North Dakota.  Plaintiff Aamna resides in Bismarck, ND, Burleigh County.

6.     Defendant DCI Credit Services, Inc. (hereinafter "Defendant" or "DCI") is a North Dakota corporation with its principal place of business located 1409 W. Villard, Dickinson, North Dakota, 58602-1347.  Sherryl Lefor is the registered agent authorized to accept service on behalf of Defendant at 1409 W. Villard, Dickinson, North Dakota, 58602-1347.

## FACTUAL ALLEGATIONS – THE EXPERIENCE OF THE REPRESENTATIVE PLAINTIFFS

**THE ALLEGED CONSUMER DEBT**

7.     Sometime prior to February 2017, it is alleged that Plaintiffs incurred a debt to Chi St. Alexius Health Bismarck (the "Medical Debt").  The Medical Debt is a consumer debt stemming from an unpaid invoice for personal medical treatment or services.

8.     On or around February 2017, the Medical Debt was assigned, transferred, or sold to Defendant for the purposes of collection.

9.     The Medical Debt arose from Plaintiffs' transactions that were incurred for personal, family or household purposes and, therefore it is a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

10.     Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1692a(3) and/or persons affected by a violation of the FDCPA with standing to bring this claim under 15 U.S.C. § 1692k(a) because they are allegedly obligated to pay Medical Debt.

**DEFENDANT IS A DEBT COLLECTOR**

11.     Defendant is engaged in a business, the principal purpose of which is the collection of any obligations (and/or alleged obligations) of consumers to pay money arising out of transactions that are primarily for personal, family, or household purposes.

12.     The "obligations and/or alleged of obligations" that Defendant attempts to collect are "debts" under 15 U.S.C. § 1692a(5).

13.     According to Defendant's website, Defendant regularly collects or attempts to collect debts owed or due (or asserted to be owed or due another).

14.     Specifically, Defendant's website states that:

   a.   Defendant is a "locally owned collection agency" and a "leader in the collections and receivables management industry";

   b.   Defendant obtains collection accounts from various creditors of consumer debt such as, healthcare providers, consumer and retail entities, and financial institutions;

   c.   "This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose."

15.    On its website, in connection with the collection of consumer debts, Defendant offers its clients a "Collection Services Agreement".

16.    Through the "Collection Services Agreement" defendant charges its clients a percentage of all monies collected in connection with consumer debts.

17.    Defendant regularly uses the mail and telephone to collect debts directly (*or indirectly through debt collection law firms*) by: mailing debt collection letters and debt collection court pleadings to consumers; making debt collection phone calls to consumers; taking payments from consumers via check and credit card by telephone, mail, and the internet; and bringing collection lawsuits against consumers.

18.    As of the date of this Complaint, Defendant has brought approximately 1,951 debt collection lawsuits against consumers in North Dakota in 2017 alone. *See North Dakota Courts Records Inquiry*, http://publicsearch.ndcourts.gov/default.aspx (Nov. 27, 2017, 1:42 p.m.) (search term "*DCI Credit Services Inc*").

19.    Defendant holds an active "Collection Agency" license with the North Dakota Department of Financial Institutions, license number CA100320.

20.    Defendant holds two active "Collection Agency Branch Registration" licenses with the North Dakota Department of Financial Institutions – license number NDBR1473340 for its Bismarck office and license number NDBR1213659 for its Fargo office.

21.    Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

22.    Defendant was acting as debt collector with respect to the collection of the alleged Medical Debt from Plaintiffs as described in paragraphs 7-10.

**DEFENDANT'S ILLEGAL PROCESSING FEES**

23.    In or around February 2017, Defendant began communicating with Plaintiffs in an attempt to the collect the alleged Medical Debt from Plaintiffs by sending multiple debt collection letters to Plaintiffs and by placing debt collection telephone calls to Plaintiffs.

24.    Defendant demanded payment of $961.98 for the total amount owed on the Medical Debt, which was broken down in four separate accounts.

25.    In or around late April 2017, Defendant began communicating with Plaintiff Aamna by placing debt collection telephone calls to her cellular telephone in an attempt to collect the alleged Medical Debt.

26.    Sometime between late April 2017 or early May 2017, Plaintiff Aamna received a telephone call from Defendant.

27.    Plaintiff attempted to work in good-faith with Defendant to resolve the Medical Debt by exploring reasonable payment options.  The parties discussed payment by check or credit card and discussed setting up an automatic payment plan.

28.    During the late April 2017 or early May 2017 telephone call, Defendant informed Plaintiffs that:

      a. The Medical Debt would be reported to Plaintiffs' credit report if a payment plan was not set up;

    b. A payment plan could only be set up by providing bank account information through ACH payments or by credit card;

    c. A $10.00 fee would be charged for every single payment by credit card; and

    d. Plaintiffs could not set up a payment plan using a bank check because a bank check did not have Plaintiffs' routing number and account number.

29.    Rather than accept a bank check from Plaintiffs, Defendant forced Plaintiffs to unnecessarily choose between two undesirable options because Plaintiffs did not want the Medical Debt to negatively affect their credit. Thus, Plaintiffs were forced to provide Defendant with their bank account information, which Plaintiffs were not comfortable doing, or pay a $10.00 fee for every single payment by credit card.

30.    After the telephone call, Defendant placed several other debt collection telephone calls to Plaintiffs seeking to obtain ACH information and/or bank account information. Plaintiff Aamna informed Defendant that she was not comfortable providing her bank account information to Defendant.

31.    On or around May 25, 2017, Plaintiff Aamna received a telephone call on her cellular telephone from Defendant, wherein Defendant made several threats to Plaintiff Aamna in an attempt to scare her and to induce payment.

32.    During the May 25, 2017 telephone call, Defendant threatened that:

    a. Defendant would no longer accept a payment plan from Plaintiffs;

    b. Plaintiffs had seven (7) days to pay the Medical Debt in full or Defendant would do whatever it takes to collect the alleged debt;

    c. Defendant would be able to collect the alleged debt even if Plaintiff refused to pay; and that

6

    d.   Defendant has ways of making consumers pay debts.

33.    In furtherance of its threats, Defendant began listing off Plaintiffs' social security numbers, places of employment (*both former and current*), address, and dates of birth to imply that Defendant would garnish Plaintiffs' wages or bank account.

34.    Defendant strongly implied that it would take any and all action to collect the Medical debt, including but not limited to garnishment, credit reporting, legal action, and any other negative action.

35.    The next day on May 26, 2017, Plaintiff Aamna called Defendant because she was unsettled from her previous conversation. The specific debt collection representative was not available so Plaintiff Aamna requested a call back.

36.    Ruth, a debt collection representative on behalf of Defendant attempted to collect the Medical Debt and asked if she would be able to help to Plaintiff Aamna.

37.    During the May 26, 2017 telephone call, Defendant informed Plaintiff Aamna that:

    a.   Plaintiffs owed a total of $961.98 for the Medical Debt;

    b.   There is a $10.00 fee to process any payment by credit card;

    c.   There would be no fee if Plaintiffs were to provide the name of their bank, routing number, and bank account number;

    d.   There would be no fee if payment was made through a health savings account ("HSA") card;

    e.   Payment could be made over the phone or on Defendant's website;

    f.   All collection accounts will be reported to the credit bureaus in thirty (30) days;

    g.   The Medical Debt would be reported to the credit bureaus if Plaintiffs did not make payments;

    h.   If Plaintiffs made payments, it would avoid the placement of adverse account information placed to their credit report; and

    i.   Plaintiffs' account could be subject to garnishment or wage garnishment.

38.    All of Defendant's debt collection telephone calls, debt collection letters, and telephone conversations with Plaintiffs are "communications" as defined by 15 U.S.C. § 1692a(2) because they conveyed information to Plaintiffs regarding Medical Debt.

39.    Defendant's representations regarding reporting the Medical Debt to Plaintiffs' credit report, not accepting multiple payments, collecting the Medical Debt by any means necessary, threats of further negative action, threats of legal action, threats of garnishments, and Defendant's ability to charge and collect processing fees were objectively false, deceptive, and misleading.

40.    Likewise, Defendant's aforementioned representations constituted unfair and unconscionable means of attempting to collect a debt.

41.    To prevent any negative action such as adverse credit reporting, garnishment, or further legal action, Plaintiffs decided to make a small payment while they contemplated their options.

42.    As a result of Defendant's false threat that payment must be made within seven (7) days, Plaintiffs wanted to make a payment as soon as possible.

43.     On or around May 30, 2017, Plaintiffs created an account on Defendant's online payment system in order to make a single payment.

44.     However, Defendant's online payment system does not accept single payments.  Rather, Defendant's online payment system only accepts the authorization of a recurring and automatic payment plan.

45.     The payment plan options ranged from six (6) payments to twenty-four (24) payments, which each payment incurring a $10.00 processing fee.   Accordingly, Defendant charged Plaintiffs a minimum of $60.00 and a maximum of $240.00 in additional fees to pay by credit card online.

46.     Any consumer that makes a payment to Defendant through Defendant's online system is required to enter into a binding contract consenting and agreeing to pay Defendant's illegal processing fees.

47.     Any consumer that makes a payment to Defendant through Defendant's online system is required to pay a $10.00 fee for every single payment by credit card.

48.     Plaintiffs did not set up a payment plan through Defendant's website and Plaintiffs did not make a payment to Defendant through Defendant's website.  Instead, Plaintiff Aamna called Defendant to make a payment over the phone.

49.     On May 31, 2017, Plaintiff Aamna called Defendant to make a single payment of $20.00 over the phone because Plaintiffs did not want to enter into a binding contract with Defendant to pay additional processing fees.

50.    Defendant allowed Plaintiffs to make a single payment over the phone, but required that Plaintiffs make a minimum payment of $25.00 when making a payment over the phone.

51.    On May 31, 2017, Plaintiffs made a payment of $25.00 and were charged a $10.00 processing fee to pay by credit card.

52.    On May 31, 2017, Defendant charged Plaintiffs' credit card with a single payment of $35.00.

53.    The $10.00 processing fee was an additional fee incidental to Plaintiffs' principal obligations and/or Plaintiffs' $25.00 payment.

54.    After Plaintiffs' May 31, 2017 payment of $35.00, Defendant only reduced the total balance on the Medical debt by $25.00.

55.    The $10.00 processing fee amounted to an additional 40% that was assessed to Plaintiffs' payment and was paid directly to Defendant.

56.    At all relevant times, Plaintiffs were informed that Defendant, and no other entity was charging the $10.00 processing fee.  Likewise, Defendant made no indication that any portion of the $10.00 fee would be passed-through to another entity.

57.    The $10.00 processing fee is an income and/or revenue generating source for Defendant.

58.    The collection of a $10.00 processing fee is not expressly authorized by the agreement creating Medical Debt and therefore, in violation of 15 U.S.C. § 1692f(1).

10

59.     North Dakota state law does not affirmatively permit debt collectors to charge consumers a processing fee and/or convenience fee to pay by credit card.  *See* N.D.C.C. § 13-05-06.3.

60.     Processing fee, credit card fees, surcharges, and/or convenience fees such as the ones charged by Defendant in this case violate the FDCPA.  *See Tuttle v. Equifax Check,* 190 F.3d 9 (2d Cir. 1999); *Quinteros vs. MBI Associates*, 999 F.Supp.2d 434 (E.D.N.Y. 2014); *Campbell v. MBI Associates, Inc.* 98 F. Supp. 3d 568 (E.D.N.Y. 2015); *Longo v. Law Offices of Gerald E. Moore & Associates, P.C.*, No. 04-5759 (N.D. Ill. Feb. 3, 2005); *Acosta v. Credit Bureau of Napa County, C.A.,* No. 14-CV-8798 (N.D. Ill. Apr. 29, 2015).

61.     All consumers that make a payment to Defendant by credit card are required to pay a $10.00 fee for every single credit card payment or transaction.

62.     It is Defendant's regular policy and practice to charge a flat $10.00 fee to consumers who pay by credit card, irrespective of whether such fee is authorized by law or contract in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

63.     Defendant is a member of ACA International, the Association of Credit and Collection Professionals (hereinafter "ACA").

64.     ACA is the leading trade association for the credit and collection industry. ACA establishes ethical standards and regularly produces educational and compliance-related information to its members.

65.    Through press releases, blogs, news articles and its own publication – *Collector* magazine, ACA has notified its members on numerous occasions as to the perils of charging consumers processing fees, convenience fees, or transaction fees.  *See e.g.*, ACA International, *Cash or Credit? State and federal concerns for charging transaction fees*, Vol. 82 Num. 02, Collector, Sept. 2016, at 46.

66.    According to ACA's website, a "debt collector should err on the side of caution prior to imposing any fees which relate to collection activity to avoid potential violations of the Fair Debt Collection Practices Act (FDCPA) and/or state law."  *See Payment Transaction Fees #4006* (June 20, 2017 12:51 p.m.), https://www.acainternational.org/assets/searchpoint/4006paymenttransactionfees.pdf.

67.    Although Defendant is a member of ACA, Defendant has chosen to willfully ignore the warnings from the industry leading source for FDCPA compliance.

68.    At all relevant times, Defendant charged Plaintiffs and all class members a $10.00 fee to pay by credit card, irrespective of whether such fee was authorized by law or contract in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

69.    Defendant's wrongful collection efforts and processing fees intentionally deceived Plaintiffs, intentionally misled Plaintiffs, and made material misrepresentations to Plaintiffs concerning the alleged debt.

70.     Defendant used unfair and unconscionable means to collect or attempt to collect the alleged debt through its wrongful collection efforts and its illegal processing fees.

71.     Specifically, by among other things: (1) collecting an amount of money that Plaintiffs do not owe; (2) falsely representing the amount of the alleged debt; (3) falsely representing that compensation may lawfully be received; and (4) collecting an amount of money not allowed by contract or the law.

72.     Defendant's false, misleading, and deceptive representations are material false statements because Defendant's representations impart in the unsophisticated consumer, a false belief that the consumer is required to pay the processing fee and that it is legal for Defendant to charge the fee, when in reality such fees are illegal.

73.     Defendant's above-mentioned conduct violated Plaintiffs' rights not be a target of unlawful, wrongful and misleading debt collection activity.

**PLAINTIFFS' HARM, DAMAGES, AND INJURIES**

74.     As a result of Defendant's unlawful and wrongful collection efforts, Plaintiffs have suffered both tangible and intangible injuries.  Specifically, Plaintiffs have suffered monetary damages and incurred out of pocket costs as result of Defendant's wrongful collection efforts.

75.     All of Plaintiffs' above-referenced injuries – both tangible and intangible – are actual, concrete injuries that are widely recognized by the United States Supreme

Court, United States Court of Appeals for the Eighth Circuit and the United States District Court for the District of Minnesota.

## CLASS ACTION ALLEGATIONS

76.    Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

77.    Pursuant to Fed. R. Civ. P. 23(a) and (b), Plaintiffs seek to certify two classes.

78.    The first class that Plaintiffs seeks to certify is defined as (hereinafter the "FDCPA Class"):

> *All consumers residing in North Dakota or South Dakota who, within one (1) year of the filing of this Complaint, made at least one payment to Defendant by credit card, were charged an additional fee to make any such payment by credit card when no such additional fee was authorized by law or contract, and who paid the additional fee.*

79.    The FDCPA Class shall be subject to the following exclusions, who are not members of the FDCPA Class, eligibility according to the above criteria notwithstanding: all (1) Counsel for Plaintiffs and the Class, (2) Counsel for Defendant, and (3) the assigned Judge, Magistrate Judge, and their clerks and staff.

80.    The second class Plaintiffs seek to certify is defined as (hereinafter the "Conversion Class"):

> *All consumers residing in North Dakota or South Dakota who, within six (6) years of the filing of this Complaint, made at least one payment to Defendant by credit card, were charged an additional fee to make any such payment by credit card*

14

*when no such additional fee was authorized by law or contract, and who paid the additional fee.*

81.    The Conversion Class shall be subject to the following exclusions, who are not members of the Conversion Class, eligibility according to the above criteria notwithstanding: all (1) Counsel for Plaintiffs and the Class, (2) Counsel for Defendant, and (3) the assigned Judge, Magistrate Judge, and their clerks and staff.

82.    During the class time-period alleged herein, Defendant did not have a policy and procedure in place to verify that charging an additional processing fee was authorized by law or contract.

83.    At all relevant times, Defendant charged Plaintiffs and all class members a fee to pay by credit card, irrespective of whether such fee was authorized by law or contract in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1).

84.    This action has been brought, and may be properly maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation.  The FDCPA Class and the Conversion Class satisfy the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements under Fed. R. Civ. P. 23(a) and (b) for class certification.

**Rule 23(a)(1) - Numerosity**

85.     According to Defendant's website, Defendant is a large debt collection agency with three offices, "a leader in the collections and receivables management industry" and offers debt collection services in multiple states.

86.     Defendant charges a flat fee of $10.00 to all consumers who make a payment to Defendant by credit card, whether or not such fee is authorized by contract or law.

87.     It is plausible that Defendant charged consumers a processing fee that was not authorized by contract or law on such a large number of consumers such that joinder of all in this lawsuit would be impracticable.

88.     The exact number of the class members is unknown at this time, but upon information and reasonable belief, the estimated number is in excess of hundreds, if not thousands of class members.

89.     The exact number of class members as well as the identities of all class members are readily ascertainable through appropriate discovery, including but not limited to the business records of Defendant and from the online accounts from Defendant's website.

**Rule 23(a)(2) - Commonality**

90.      All members of the FDCPA Class and the Conversion Class had their rights violated in the same manner by the same actions of Defendant.  There are common questions of law and fact that exist as to the FDCPA Class and the Conversion Class.

91.    These common legal and factual questions include:

a.    Whether Defendant used false, deceptive, and/or misleading means in connection with the collection of the class members' alleged debt by: falsely representing the character, amount, and/or legal status of the alleged debt; falsely representing that compensation may be lawfully received by Defendant for the collection of the alleged debt; and by threatening to take and/or taking action that cannot legally be taken; and

b.    Whether Defendant used unfair or unconscionable means to collect or attempt to collect the alleged debt from the class members by collecting and/or attempting to collect an amount that was not expressly authorized by the agreement creating the alleged debt and that was not permitted by law.

92.    The common evidence that will drive resolution of the claims for the FDCPA Class and the Conversion Class is the following:

a.    A list of consumers who made at least one payment to Defendant by credit card and who paid a fee to Defendant to make any such payment;

b.    A list of all instances in which Defendant charged consumers a fee to pay by credit card; and

c.    A total of all processing fee charges that Defendant illegally collected from the aforementioned class of consumers.

93.    These common questions of law and fact predominate over questions that may affect individual class members.  The answer to these common questions will advance the adjudication or resolution of the litigation as to all class members.

**Rule 23(a)(3) - Typicality**

94.    Plaintiffs' claims are typical of the claims of all the other members of the FDCPA Class and the Conversion Class.  Plaintiffs have the same claims to statutory

17

relief and have suffered the same injuries as all other members of the FDCPA Class and the Conversion Class.

95.     The claims of Plaintiffs and the claims of all class members originate from the same conduct, practice, and procedure on the part of Defendant. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts.

96.     Any defenses that Defendant may have to liability or quantum of damages with respect to Plaintiffs' claims would be generally applicable to all members of the FDCPA Class and the Conversion Class.

**Rule 23(a)(4) - Adequacy**

97.     Plaintiffs bring this lawsuit after an extensive investigation of Defendant's alleged misconduct.

98.     Plaintiffs bring this lawsuit with the intention to stop Defendant's unlawful practices and to recover statutory penalties for all consumers affected.

99.     Plaintiffs will fairly and adequately protect the interests of all members of the FDCPA Class and the Conversion Class.  Plaintiffs have no interest adverse and/or in conflict to the interests of the members of the FDCPA Class and the Conversion Class.

100.     Plaintiffs' counsel, the Consumer Justice Center, P.A. and Adam R. Strauss, Esq. at Tarshish Cody, PLC, practice exclusively in consumer rights law.

101.    Plaintiffs' counsel, the Consumer Justice Center, P.A., has been certified as class counsel in dozens of class actions enforcing consumer rights laws District Courts around the country.

102.    Plaintiff and Plaintiffs' counsel will continue to vigorously pursue relief for the FDCPA Class and the Conversion Class.  Neither Plaintiffs nor their counsel have any interest which might cause them to not vigorously pursue the instant class action lawsuit.  Plaintiff and Plaintiffs' counsel are committed to expending the time, energy, and resources necessary to successfully prosecute this action on behalf of the FDCPA Class and the Conversion Class.

**Rule 23(b)(1) & (2) – Risk of Inconsistent or Dispositive Adjudications**

103.    Certification of a class under Fed. R. Civ. P. 23(b)(1)(A) is appropriate because the prosecution of separate actions for individual class members creates a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for the Defendant, who collects debt throughout the country.

104.    Certification of a class under Fed. R. Civ. P. 23(b)(1)(B) is appropriate because the prosecution of separate actions by individual class members of the classes would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

105.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that Defendant has acted or refused to act on grounds generally applicable to the FDCPA

Class and the Conversion Class making final declaratory or injunctive relief appropriate for the entire class.

**Rule 23(b)(3) – Predominance/Superiority**

106.    A class action under Fed. R. Civ. P. 23(b)(3) is appropriate because there are numerous questions of law and fact common to Plaintiffs, the FDCPA Class, and the Conversion Class that substantially predominate over questions that may affect individual class members.

107.    A class action is superior to all other available methods for the fair and efficient adjudication of the controversies raised in this Complaint because individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake.  Thus, members of the FDCPA Class and the Conversion Class have little interest in prosecuting or controlling the litigation given the small amounts at stake compared to the cost, risk, delay, and uncertainty of recovery after prosecuting this lawsuit.

108.    The concentration of litigation of these claims in one forum will permit a large number of similarly situated persons to prosecute their common claims efficiently, without unnecessary duplication of effort and expense that individual actions would engender, and therefore, promote judicial economy.

109.    All members of the FDCPA Class and the Conversion Class had their rights violated in the same manner by the same actions of Defendant.

110.    Statutory relief under the FDCPA follows from evidence that Defendant charged all consumers a fee to pay by credit card when no such fee was authorized by law or contract – not the subjective or individual experience of any class member.

111.    Upon information and belief, few members of the FDCPA Class and the Conversion Class are aware that Defendant's action were unlawful.

112.    Plaintiff and Plaintiffs' counsel are not aware of any other pending actions against Defendant related to their regular practice of charging consumers an unlawful fee to pay by credit card.

113.    The class notice mechanism provides an opportunity for uninformed members of the FDCPA Class and the Conversion Class to learn about their rights and obtain relief where they otherwise would not have.

## TRIAL BY JURY

114.    Plaintiffs are entitled to and hereby demands a trial by jury.  *See* U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSES OF ACTION

## COUNT I
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## FALSE OR MISLEADING REPRESENTATIONS

115.    Plaintiffs restate and re-allege the preceding allegations of this Complaint.

116.    Defendant used false, deceptive and/or misleading means in connection with the collection of the alleged debt from Plaintiffs and the FDCPA class members by:

    a.  Falsely representing the character, amount and/or legal status of the alleged debt;

    b.   Falsely representing that compensation may be lawfully received by Defendant for the collection of the alleged debt; and

    c.   Threatening to take and/or taking action that cannot legally be taken.

117.   Defendant's conduct violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10).

118.   As a result of Defendant's violations of the FDCPA, Plaintiffs and the members of the FDCPA Class are entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

### COUNT II
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### UNFAIR AND UNCONSIONABLE MEANS

119.   Plaintiffs restate and re-allege the preceding allegations of this Complaint.

120.   Based on the aforementioned conduct, Defendant used unfair or unconscionable means to collect or attempt to collect the alleged debt from Plaintiffs and the FDCPA Class members.

121.   Defendant used unfair or unconscionable means to collect or attempt to collect the alleged debt from Plaintiffs and the FDCPA Class members by collecting and/or attempting to collect an amount that was not expressly authorized by the agreement creating the alleged debt and that was not permitted by law.

122.   Defendant's conduct violated 15 U.S.C. §§ 1692f and 1692f(1).

123.    As a result of Defendant's violations of the FDCPA, Plaintiffs and the members of the FDCPA Class are entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT III
## CONVERSION

124.    Plaintiffs restate and re-allege the preceding allegations of this Complaint.

125.    At all relevant times, Defendant never had the present right to use, take possession of, or move Plaintiffs' property or the Conversion Class members' property – in this case, their money.

126.    Defendant intentionally deprived, and interfered with the use, possession, and enjoyment of Plaintiffs' property and the Conversion Class members' property, without a claim of right, by unlawfully charging and retaining a fee for each credit card payment.

127.    Defendant converted Plaintiffs' money and the Conversion Class members' money for its own use and benefit by unlawfully charging and retaining a fee for each credit card payment.

128.    As a direct and proximate result of Defendant's conversion, Plaintiffs and the members of the Conversion Class have been deprived of the use, possession, and enjoyment of their money and damaged in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs Steven Flemmer and Aamna Flemmer demand a trial by jury and pray for judgment against Defendant DCI Credit Services, Inc. as follows:

1.  Awarding judgment against Defendant in an amount to be determined at trial;

2.  Certifying both the FDCPA Class and the Conversion Class as described herein;

3.  Awarding Plaintiffs actual damages, statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1) - (3) against Defendant;

4.  Awarding the FDCPA Class members actual damages (reimbursing them for the charging of illegal fees), statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1) - (3) against Defendant;

5.  Awarding Plaintiff damages against Defendant caused by Defendant's conversion of their property;

6.  Awarding Conversion Class members damages against Defendant caused by Defendant's conversion of their property;

7.  Awarding Plaintiff, the FDCPA Class members, and the Conversion Class members any costs, litigation expenses, disbursements, and allowable attorneys' fees; and

8.  Awarding Plaintiff, the FDCPA Class members, and the Conversion Class members such other and further relief as the Court deems proper, just and equitable.

Dated:  December 6, 2017                    **TARSHISH CODY, PLC**

                                        By:    s/ Adam R. Strauss
                                            Adam R. Strauss (#0390942)**
                                            ars@attorneysinmn.com
                                            Scott M. Cody (#0392137)
                                            scody@attorneysinmn.com
                                            6337 Penn Avenue South
                                            Minneapolis, Minnesota 55423
                                            Telephone: (952) 361-5556
                                            Facsimile: (952) 361-5559

                                        **Motion for Pro Hac Vice Admission to be filed after case number assigned.*

Dated:  December 6, 2017                    **CONSUMER JUSTICE CENTER, P.A.**

24

By:     <u>s/ Thomas J. Lyons, Jr.</u>
                Thomas J. Lyons, Jr. (#0249646)
                tommy@consumerjusticecenter.com
                367 Commerce Court
                Vadnais Heights, Minnesota 55127
                Telephone: (651) 770-9707
                Facsimile: (651) 704-0907

**ATTORNEYS FOR PLAINTIFF**

25

## **VERIFICATION OF COMPLAINT AND CERTIFICATION**

Pursuant to 28 U.S.C. § 1746, Plaintiff Aamna Flemmer verifies, certifies, and declares under penalty of perjury, as follows:

1.  I am a Plaintiff in this civil proceeding.
2.  I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3.  I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4.  I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5.  I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6.  Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7.  Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.
8.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**EXECUTED ON**   Dec           6th    ,    2017
               **Month**          **Day**        **Year**


                              _Aamna U. Flemmer_
                              **Aamna Flemmer**

26

## VERIFICATION OF COMPLAINT AND CERTIFICATION

Pursuant to 28 U.S.C. § 1746, Plaintiff Steven Flemmer verifies, certifies, and declares under penalty of perjury, as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.
8. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**EXECUTED ON**   ___12___   ___6___,   ___2017___
                    **Month**      **Day**      **Year**


_____
**Steven Flemmer**